**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Echelon Property & Casualty Insurance Company,<br><br>    Plaintiff,<br><br>v.<br><br>Allstate Med Trans LLC, et al.,<br><br>    Defendants. | No. CV-19-08295-PCT-DWL<br><br>**ORDER** |

In this action, Plaintiff Echelon Property & Casualty Insurance Company ("Echelon") seeks a declaration that an insurance policy it issued to Defendant Allstate Med Trans LLC ("Allstate Med") doesn't cover a car accident that occurred in July 2017. (Doc. 1.) Although Allstate Med was served with the complaint (Doc. 11), it never answered or otherwise responded. Accordingly, Echelon has filed a motion for default judgment. (Doc. 12.) Specifically, Echelon seeks a judgment that (1) confirms the absence of coverage and (2) includes an award of $3,664.50 in attorneys' fees and costs. For the following reasons, Echelon's motion will be granted in part and denied in part.

**BACKGROUND**

I.  Underlying Facts

The following facts are derived from Echelon's complaint. (Doc. 1.)

Echelon issued an insurance policy to Allstate Med. (*Id.* ¶ 12.) The policy had several exclusions, including an exclusion for "automobile related claims." (*Id.* ¶ 16.) This exclusion encompassed any claim for "'[b]odily injury' or 'property damage' arising out

of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured." (*Id.*) The policy also included a provision requiring Allstate Med "to notify Echelon as soon as practicable of an occurrence or offense which may result in a claim." (*Id.* ¶ 16.)

In July 2017, a minivan owned by Allstate Med was involved in a collision. (*Id.* ¶ 17-18.)

In June 2019, one of the occupants of the vehicle that was struck by the minivan filed a lawsuit against Allstate Med. (*Id.* ¶ 20.) Among other things, the lawsuit alleged that the driver of the minivan, who was one of Allstate Med's employees, was intoxicated at the time of the collision. (*Id.* ¶ 22.)

In September 2019, Echelon was notified for the first time about the collision. (*Id.* ¶¶ 25, 26.) This notification occurred when Allstate Med's attorneys delivered a tender for a defense in the lawsuit. (*Id.* ¶ 25.) In the tender, Allstate Med admitted that the driver was one of its employees and further admitted that the employee was intoxicated at the time of the collision. (*Id.* ¶ 27.) Additionally, Allstate Med admitted that the minivan "had been removed from its auto policy because it was temporarily out of service and not scheduled or authorized for any rides." (*Id.* ¶ 28.)

On October 3, 2019, Echelon responded to the tender by informing Allstate Med that it was disclaiming coverage based on, *inter alia*, the automobile exclusion in the policy. (*Id.* ¶ 30.)

On October 8, 2019, Allstate Med's attorneys informed Echelon that they disagreed with the determination of non-coverage (without explaining why) and indicated they would pursue an assignment of rights against Echelon. (*Id.* ¶ 31.)

II.     Procedural History

On October 9, 2019, Echelon initiated this action by filing a complaint. (Doc. 1.) The complaint seeks a declaration of no coverage, as well as costs and attorneys' fees. (*Id.* at 5-6.)

On December 31, 2019, Echelon sought an extension of time to complete service. (Doc. 9.)  That motion was granted.  (Doc. 10.)

On January 13, 2020, Echelon timely serve Allstate Med.  (Doc. 11.)

On March 4, 2020, after Allstate Med failed to answer or otherwise respond to the complaint, Echelon applied for entry of a default (Doc. 13) and also filed a motion for default judgment (Doc. 12).

On March 6, 2020, the Clerk entered the requested default.  (Doc. 15.)

**ANALYSIS**

I. Default Judgment Standard

The "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  The following factors, known as the *Eitel* factors, may be considered when deciding whether default judgment is appropriate:  (1) the possibility of prejudice to the plaintiff, (2) the merits of the claims, (3) the sufficiency of the complaint, (4) the amount of money at stake, (5) the possibility of factual disputes, (6) whether the default was due to excusable neglect, and (7) the policy favoring decisions on the merits.  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"[T]he general rule" for default judgment purposes "is that well-pled allegations in the complaint regarding liability are deemed true." *Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  "The district court is not required to make detailed findings of fact." *Id.*  "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

II. The First, Fifth, Sixth, And Seventh *Eitel* Factors

"In cases like this one, in which Defendants have not participated in the litigation at all, the first, fifth, sixth, and seventh [*Eitel*] factors are easily addressed." *Zekelman Indus. Inc. v. Marker*, 2020 WL 1495210, *3 (D. Ariz. 2020).

The first factor weighs in favor of default judgment.  If Echelon's motion for default judgment were denied, it would be without other recourse.  *See, e.g., Stillwater Ins. Co. v.*

*Fricker*, 2018 WL 2985255, *1 (D. Ariz. 2018) (first factor weighed in favor of default judgment in declaratory judgment action where insurer sought determination of no coverage); *Mesa Underwriters Specialty Ins. Co. v. Paradise Skate, Inc.*, 2016 WL 9045622, *3 (N.D. Cal. 2016) ("There is potential prejudice where denying default judgment would deny an insurer a judicial determination as to whether it has a duty to indemnify and defend the defendant and whether it is entitled to reimbursement of the defense costs in the underlying action.  Moreover, an insurer's continued exposure to liability in an underlying lawsuit amounts to potential prejudice that weighs in favor of default judgment.") (citations omitted).

The fifth and sixth factors weigh in favor of default judgment or are neutral.  Due to Allstate Med's failure to participate, there is no dispute over material facts and no indication that default is due to excusable neglect.

The seventh factor generally weighs against default judgment, given that cases "should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) of the Federal Rules of Civil Procedure, which authorizes default judgments, "indicates that this preference, standing alone, is not dispositive." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Put simply, "the default mechanism is necessary to deal with wholly unresponsive parties who could otherwise cause the justice system to grind to a halt.  Defendants who appear to be 'blowing off' the complaint should expect neither sympathy nor leniency from the court."  2 Gensler, Federal Rules of Civil Procedure Rules and Commentary, Rule 55, at 119-20 (2020).

III.     The Fourth *Eitel* Factor—The Amount Of Money At Stake

"Where the plaintiff's claim is for declaratory relief rather than for money damages, some courts have found that this factor weighs in favor of granting default judgment," but "[w]here the declaratory relief sought implicates the parties and merits of a separate action, . . . courts have considered the amount at stake in that separate action while weighing the *Eitel* factors." *Stillwater Insurance*, 2018 WL 2985255 at *2.

Here, although Echelon is not seeking an award of damages against Allstate Med, the declaratory relief it is seeking is still valuable—it certified in its complaint that diversity jurisdiction exists because the amount in controversy exceeds $75,000.  (Doc. 1 ¶ 11.)  $75,000 is a substantial sum, so the fourth factor weighs against granting default judgment.

IV.     The Second And Third *Eitel* Factors—Merits And Sufficiency

That leaves the second and third *Eitel* factors—the merits of the claim and the sufficiency of the complaint.  "These two factors are often analyzed together and require courts to consider whether a plaintiff has stated a claim on which it may recover."  *Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted).  "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important."  *Id*.

Here, both factors weigh in favor of granting default judgment.  Taken as true, the factual allegations in the complaint establish that the accident fell within the policy's automobile exclusion.  Thus, Echelon is entitled to a determination of no coverage.  *Cf. Stillwater Insurance*, 2018 WL 2985255 *2 (second and third *Eitel* factors favored default judgment in insurer's declaratory relief action because complaint established that underlying lawsuit fell within policy's exclusions).

V.      Balancing The Factors

Having considered all of the *Eitel* factors, the Court concludes that default judgment is appropriate.

VI.     Attorneys' Fees And Costs

Echelon also requests attorneys' fees and costs "pursuant to Federal Rule of Civil Procedure 54(d)(2), Local Rule of Federal Civil Procedure 54.2, and A.R.S. § 12-341.01."  (Doc. 12 at 2.)

As an initial matter, the only one of these provisions that might provide a substantive entitlement to attorneys' fees is A.R.S. § 12-341.01.  The other provisions set forth the procedures governing requests for attorneys' fees—they do not, on their own, entitle a prevailing party to recover such fees.

A.R.S. § 12-341.01(A) provides in relevant part that, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees."  Here, Echelon is clearly the successful party, and although Echelon did not provide any briefing concerning whether this lawsuit qualifies as an "action arising out of a contract," the law makes clear that it does.  *See, e.g., Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v. Aero Jet Servs., LLC*, 2012 WL 510490, *1-4 (D. Ariz. 2012) (canvassing Arizona law before concluding that a "successful party in an insurance declaratory relief action" may seek fees under A.R.S. § 12-341.01(A)); *John Deere Ins. Co. v. W. Am. Ins. Grp.*, 854 P.2d 1201, 1204-05 (Ariz. Ct. App. 1993) (awarding fees under A.R.S. § 12-341.01 to insurer who initiated and prevailed in declaratory relief action).

Nevertheless, A.R.S. § 12-341.01(A) does not compel an award of attorneys' fees to the prevailing party in every contract action.  "The legislature used the phrase 'may award' . . . . The natural import of this phrase is to vest discretion in the trial court to determine the circumstances appropriate for the award of fees." *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985).  The factors Arizona courts have identified as "useful" in determining whether to award fees pursuant to A.R.S. § 12-341.01(A) include (1) the merits of the claim or defense of the unsuccessful party; (2) whether the litigation could have been avoided or settled; (3) whether assessing fees would cause extreme hardship; (4) whether the successful party prevailed with respect to all relief sought; (5) whether the legal question was novel or had been previously adjudicated; and (6) whether an award would discourage other parties with tenable claims or defenses from litigating them." *Id.*

Here, the Court's analysis is hamstrung by the fact that Echelon did not provide any briefing or evidence concerning these factors.  Instead, it simply submitted an itemization of its fees and rates (Doc. 12-3) and an attorney declaration verifying that the listed time entries "were reasonabl[y] necessary for the successful defense of this matter" (Doc. 12-2 ¶ 12).  This is problematic because, among other things, it's not clear to the Court that

litigation was actually necessary. Although the complaint mentions some back-and-forth between the parties' counsel that preceded Echelon's decision to file suit, which culminated with Allstate Med's counsel voicing an intention to seek an assignment of rights (Doc. 1 ¶¶ 30-31), the absence of detail makes it impossible to evaluate whether Echelon truly needed to rush into federal court the very next day to file this lawsuit. Perhaps that step was justified, but Echelon hasn't met its burden of establishing justification on the current record. Thus, the Court will, in its discretion, deny Echelon's request for attorneys' fees under A.R.S. § 12-341.01(A).

Finally, although the declaration from Echelon's attorney explains that Echelon is seeking $3,064 in attorneys' fees and $600.50 in "costs" (Doc. 12-2 ¶ 14), it is unclear where the "costs" figure comes from. The enclosed billing records (Doc. 12-3) only seem to identify attorneys' fees. In any event, to the extent Echelon wishes to submit a bill of costs under Rule 54(d)(1) and LRCiv 54.1(a) after entry of judgment, it may do so.

Accordingly,

**IT IS ORDERED** that Echelon's motion for default judgment (Doc. 12) is **granted in part and denied in part**. A separate judgment will issue, after which the Clerk of Court shall terminate this action.

Dated this 15th day of June, 2020.

Dominic W. Lanza
United States District Judge